to take the mental process, which may well be novel, and assume that it's in the prior art or not. I'm not worried about the district court. Most of these cases I predict are going to come to us from the patent office, so we're going to have an examiner throwing a case out in a very easy, facile way under 101 if the test is too tight, or being required to examine under all the other sections if the test is too loose. So presumably the test has got to be calibrated in a way that it can be applied in the real world by real examiners. I agree. And I would suggest that the key to making this third factor that we've offered manageable, practical, and capable of implementation in the real world is what Flute says at page 59. And what it says is the notion that post-solution activity, no matter how conventional or obvious in itself, can transform unpractical principle into a practical process. And then it goes on to say that doesn't work. Okay, but how about Comiskey? Comiskey seemed to try to use the necessity of computer implementation as the test for separating between post-solution activity or trivial use of computer or improper tying to a machine, to separate it from what was a proper tying to a machine. And Mr. Chen used what sounded to me almost identical when he said the machine had to have a central role in carrying out the process. But what's wrong with the central role test or the necessity test of Comiskey? Well, your honor, I'm not sure that Comiskey had a central role test. It talked about necessity. Mr. Chen talked about central role. I understand. At least as I read Comiskey, and the Comiskey panel is deciding 101 against the backdrop of State Street as binding panel precedent on the Comiskey panel. And the Comiskey panel separated itself, the claims, into two sets. One, pure methods, not tied to the machine in any way. Post-solution. Well, but in the end, you're asking us to prefer your test of unconventional use of a computer from Judge Dyke's test of a necessity to use the computer. Why is your test better? Well, I wouldn't be so bold as to say it was better. Maybe it is, but why? I think I could articulate Judge Dyke's test. We're very close to the same. And I think if Judge Dyke's test had been articulated as post-solution activity, post the mental process, which is advantage, post-solution activity that ties the machine would not make something pathological subject matter. But Mr. Lee, if you add the computer, let me just ask the question I asked of Mr. Chen and he ducked. Computer is simply mental steps, isn't it? True. Your Honor, the answer is yes. And I think that in Comiskey, in the second set of claims, in State Street, the computer is post-solution implementing steps. To go to Judge Moore's question... I don't understand. What does that mean? Why is it post-solution? I mean, the computer is bringing about the solution. It sounds to me as though you're suggesting that all software patents tied to a computer are invalid. Am I misunderstanding you? No. The answer is that I'm not getting to it. The answer is not all software patents would be invalid. Many would under our test today. And to be candid, that would be true. Comiskey would. State Street would. Which is why I think we're the one party arguing today that the court should revisit State Street. So why is State Street invalid? Because the solution is the mental process of the hub and spoke. And the addition of the computer to implement it, that solution could be implemented, as Judge Lori said, with pen and paper. The solution was... But State Street said it couldn't be. It said that the use of a computer is a virtual necessity. It may be a virtual necessity as a practical matter, but that solution could have been implemented with pen and paper. And I think that's what Sleuth is talking about when he talks about post-solution. Wasn't State Street, which is an apparatus claim with multiple means clauses, the equivalent of a process claim consisting of performing all the functions that the means clauses do? That's true. And I think that's why Judge Wood said that the precise categorization of claims was less important. I know my time is up. Thank you very much, Mr. Hanson. You have about eight minutes of rebuttal. Eight and a half, to be more precise, if you need it all. The early Greeks said the world was created of earth, air, fire, and water. We've come a long way since that time. Now the categories that seem to be most relevant are matter and energy and information. And there's a good argument that can be made that information is physical. Information doesn't exist unless it's captured in some physical form. It's either got to be written on paper. It's got to be in a computer memory. It's got to be in DNA. It's got to be captured in some physical form. So if you accept for a moment that the Cochrane v. Diener rule is a limitation on section 101 and that there has to be a physical transformation, when you transform information from one form to another, from an offer to an acceptance to a contract, you've made a physical transformation. So I think when you talk about this requirement of physical transformation, you haven't really made your life any easier than it was before. My suggestion is we go back to the idea that as long as there's a substantial amount of interaction with the physical world, then we move from an abstract idea, when we're talking about a process, we move from an abstract idea to one that satisfies section 101. I thank the court for its help. We thank all four counsel. The case is submitted. All rise. Thank you.